Albert H. MESTAS, Plaintiff-Appellant,

v.

Harry HUGE, C. W. Davis, Paul R. Dean in their capacity as Trustees for the United Mine Workers of America Welfare and Retirement Fund, Defendants-Appellees.

No. 77–1225.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Aug. 11, 1978.

Decided Oct. 16, 1978.

---

Maurice G. Knaizer, Denver, Colo. (Jeffrey C. Bluth, Denver, Colo., on brief), of the Legal Aid Society of Metropolitan Denver, Inc., for plaintiff-appellant.

Bruce D. Pringle, Denver, Colo. (James A. Clark of Clark, Martin & Pringle, Denver, Colo., on brief), for defendants-appellees.

Before McWILLIAMS and BARRETT, Circuit Judges, and COOK, District Judge.*

McWILLIAMS, Circuit Judge.

Albert H. Mestas, a retired coal miner, applied for a retirement pension from the United Mine Workers of America Welfare and Retirement Fund. Mestas' application was denied by the trustees of the Fund because Mestas did not meet one of the eligibility requirements, namely, that a miner must complete 20 years of classified service in the coal industry in the United States in order to be eligible for a retirement pension. Mestas had only 17½ years of classified service in the coal industry.**

Mestas then instituted the present action in the United States District Court for the District of Colorado against the trustees of the Fund, contending that the 20-year rule was arbitrary, capricious and unreasonable and that he was entitled to a full pension. Alternatively, Mestas sought a pro-rata pension based on the number of years he had in fact worked in the coal industry. Mestas also alleged that the trustees of the Fund had violated their fiduciary duty to administer the Fund so as to pay reasonable benefits to the greatest number of miners possible. By answer, the trustees, in effect, admitted denying Mestas' application for a pension on the ground that Mestas had not met the 20-year requirement and asserted that the requirement itself was a valid one.

---

* Of the United States District Court for the Northern District of Oklahoma, sitting by designation.

** There is some suggestion that Mestas in reality had 19 years of classified service. We accept the trial court's finding of 17½ years. In either event, it is agreed that Mestas did not meet the 20-year requirement.

Trial of this matter was to the court. Mestas and two of his children testified concerning Mestas' employment as a coal miner with the Colorado Fuel & Iron Company in the Frederick Mine in Valdez, Colorado, and also concerning injuries sustained by Mestas in a mine accident in 1947. The only other witness was an employee of the Fund who was questioned about the Fund's eligibility requirements and the Fund itself, and how it operated.

The underlying facts are not in dispute. Albert H. Mestas is a retired coal miner now living in Denver, Colorado. He was born on March 25, 1910 and from 1942 until April 1961 worked as a coal digger for the Colorado Fuel & Iron Company in its Frederick Mine in Valdez, Colorado. Mestas did not work in the Frederick Mine continuously and was off work from time to time, to the end that he had only 17½ years of so-called classified service. In 1947 Mestas slipped on a piece of coal and sustained a back injury for which he received temporary disability benefits. The back injury continued to plague Mestas during the ensuing years. In April 1961, Mestas ceased working for the Colorado Fuel & Iron Company when the latter permanently closed its Frederick Mine. Though there were coal mines in the area, Mestas did not look for other employment as a coal miner, testifying that his back injury continued to bother him and that he was also fearful that if he should obtain other employment as a coal miner he would not have the seniority that he enjoyed with Colorado Fuel & Iron Company. Mestas then moved to Denver where he thereafter obtained employment for brief periods of time as a farm laborer and as a hotel janitor.

On April 1, 1973, Mestas made application to the United Mine Workers of America Welfare & Retirement Fund for a retirement pension. This Fund was created as a part of the National Bituminous Coal Wage Agreement of 1950, an agreement between the United Mine Workers of America and those coal operators and associations signatory to the agreement. Under the agreement the Fund was to be operated by a Board of Trustees, one to be appointed as a representative of the coal operators, one to represent the United Mine Workers, and the third to be a neutral party selected by the other two trustees. The Fund was funded by the coal operators who were signatory to the 1950 agreement, payments into the Fund being a royalty on each ton of coal produced under the contract for either use or sale. The basic purposes of the Fund were to make payments of benefits to coal miners, their families and dependents for medical and hospital care, pensions on retirement, death benefits, compensation for injuries or illness resulting from occupational activity, and other related welfare purposes. For a more detailed background account concerning the organization and purpose of the Fund, see *Blankenship v. Boyle*, 329 F.Supp. 1089 (D.D.C. 1971).

As indicated, Mestas made his application for a pension on April 1, 1973. As of that date eligibility was determined by reference to both the so-called Resolution 90 and the settlement agreement reached subsequent to *Blankenship v. Boyle*, 329 F.Supp. 1089 (D.D.C. 1971). In other words, if Mestas met the requirements of either Resolution 90 or the *Blankenship* settlement agreement he would be entitled to a pension. Resolution 90 contains the following eligibility requirements: an applicant must be at least 55 years of age, and must have 20 years of "classified service" as a mine worker, and must have five years of "signatory service." The *Blankenship* settlement agreement provided that an applicant must have been born before April 1, 1916, and must have quit work before April 1, 1975, and must also have 20 years of "classified service" as a mine worker and five years of service for an employer signatory after May 1, 1946. So, under both Resolution 90 and the *Blankenship* settlement agreement an applicant had to have 20 years service as a miner, five years of which had to be for a signatory employer.

As indicated, Mestas did not meet the 20-year requirement, and it was for this reason that Mestas' application was denied. Mestas had only 17½ years of classified service as a miner in the coal industry.

However, Mestas did more than meet the requirement that an applicant have at least 5 years of service with a signatory employer, Mestas having some 13½ years of service for a signatory employer. It is this latter fact which triggers the present controversy. However, in our view the central issue in this case is the validity of the 20-year requirement, and, if it be valid, then the fact that Mestas exceeded the requirement of 5 years of service for a signatory employer is immaterial. In this regard the basic thrust of Mestas' argument is that the 20-year requirement is arbitrary, capricious and unreasonable and therefore invalid.

■ Trustees of pension funds have traditionally been accorded wide latitude in adopting eligibility requirements, and such standards are not to be overturned by the courts absent a clear showing of arbitrariness and capriciousness. *Pete v. United Mine Workers of America Welfare and Retirement Fund of 1950*, 171 U.S.App.D.C. 1, 9, 517 F.2d 1275, 1283 (1975); *Giler v. Board of Trustees of Sheet Metal Workers Pension Plan of Southern California*, 509 F.2d 848 (9th Cir. 1975); *Gaydosh v. Lewis*, 132 U.S.App.D.C. 274, 410 F.2d 262 (1969). Where the trustees of a pension fund in setting eligibility standards have several rational alternatives, and select one and reject the others, there is no basis for judicial intervention. *Lowenstern v. International Association of Machinists and Aerospace Workers AFL–CIO*, 156 U.S.App.D.C. 228, 230, 479 F.2d 1211, 1213 (1973); *Miniard v. Lewis*, 128 U.S.App.D.C. 299, 387 F.2d 864 (1967), *cert. denied* 393 U.S. 873, 89 S.Ct. 166, 21 L.Ed.2d 144 (1968). Thus, the determination by the trustees in the instant case to adopt a so-called flat pension plan, as opposed to a pro-rata plan based on years of service, is an example of selecting one rational alternative over another. In *Roark v. Boyle*, 141 U.S.App.D.C. 390, 394, 439 F.2d 497, 501 (1970), the following pertinent language appears:

> Of course the Trustees must set eligibility requirements which are consistent with the financial integrity of the Fund. Moreover, we recognize that the fact that

this Fund has established a flat pension plan has an impact on eligibility requirements. Although a plan that varies the amount of pension with contributory input, e. g. the length of time that a pensioner has worked in contributory employment, has obvious equity, we cannot say that the law condemns outright, as inherently unreasonable, a flat pension plan that pays an equal amount to all pensioners meeting reasonable eligibility requirements.

· Our study of the matter leads us to conclude, as did the trial court, that the 20-year requirement is neither arbitrary, capricious nor unreasonable. Our attention has not been directed to any case where it has been held that the eligibility standards relating to a pension fund of the type here under consideration must be tied solely to years of service for a signatory employer, and may not require a specified number of years of service in the industry in general. The cases relied on by Mestas do not support such a conclusion. The purpose behind the 20-year requirement is two-fold: (1) to encourage continuous employment of workers during their most productive years in the coal industry, thereby insuring an adequate work force for the industry, and (2) to maintain the financial integrity of the fund itself. To us the 20-year requirement has an underpinning that is reasonable and not arbitrary.

■ There is nothing in the record before us to indicate that the trustees violated any fiduciary duty owed Mestas. It is perhaps true that the trustees under the 1950 agreement had a duty to liberalize and maximize benefits to the extent allowed by the Fund itself. However, the evidence was that the plan was at the time on a pay-as-you-go basis, with all money coming in from signatory employers being paid out in benefits, to the end that there were no additional or idle funds with which to further liberalize eligibility requirements. It is noted that the Fund paid out a great range of welfare benefits, not just retirement pensions.

In sum, there being no clear showing of an arbitrary or capricious fixing of eligibili-

454

ty requirements, we are not inclined to second guess the trustees as to just where the eligibility line should be drawn. Wherever the line is drawn, there will be those, such as Mestas, who barely miss.

Judgment affirmed.