**Debbie A. CHILDERS, Plaintiff,**

v.

**MEDSTAR HEALTH, et al., Defendants.**

**No. CIV.WDQ–03–1443.**

United States District Court,
D. Maryland,
Northern Division.

Nov. 3, 2003.

John J. Condliffe, Shub Condliffe and Condliffe PA, Towson, MD, for Plaintiff.

Douglas William Desmarais, Smith and Downey PA, Baltimore, MD, Mark A. Gilday, Bregman Berbert Schwartz and Gilday LLC, Bethesda, MD, for Defendants.

## MEMORANDUM OPINION AND ORDER

QUARLES, District Judge.

In this Employee Retirement Income Security Act of 1974[1] ("ERISA") action, Debbie Childers ("Ms.Childers"), has sued MedStar Health, Inc. Cash Balance Retirement Plan (the "Plan"), MedStar Health, Inc. ("MedStar"), and Norman Greene ("Mr.Greene") for retirement benefits paid to Mr. Greene that she believes were owed to her. Compl. ¶ 11.

MedStar is a not for profit, community-based healthcare organization. Defs.' Mot. to Dismiss 2. Washington Hospital Center in Washington, D.C. is a component of MedStar. *Id.* Ms. Childers' mother, Ms. Hannah Greene ("Ms.Greene"), was an employee of Washington Hospital Center until her retirement in 1996. *Id.* When Ms. Greene retired, MedStar provided her with an application for retirement benefits and accompanying retirement plan information. *Id.*

The retirement plan information included an explanation of the Qualified Joint and Survivor Annuity ("QJSA") and certain optional forms of benefit. *Id.* Both the plan information and the application explained that married participants must receive benefits in the form of a QJSA unless they select other forms and/or other beneficiaries, and their spouses consent to the elections. *Id.* at 3; *see also* Defs.' Ex. 1–2 (Ms. Greene's retirement benefit application and the plan information booklet).

Ms. Greene's application for benefits indicated that she was not married. *Id.* Rather than selecting the mandatory QJSA for married participants, Ms. Greene chose an alternative form of benefit. *Id.*

In 1999, Ms. Greene designated Ms. Childers as the beneficiary of any retirement benefits not paid to Ms. Greene before her death. Defs.' Mot. to Dismiss 3. Ms. Greene received benefits under the plan until her death in March 2000. *Id.* The Plan then began making payments to Ms. Childers. *Id.* In late 2000, Mr. Greene notified the Plan that he had been married to Ms. Greene at the time she executed her retirement benefit application and that he was entitled to Ms. Greene's remaining benefits. *Id.* The Plan suspended benefit payments to Ms. Childers and investigated Mr. Greene's claim. *Id.* The Plan determined that Mr. and Ms. Greene had been married when the application was executed; Mr. Greene, therefore, was entitled to Ms. Greene's benefits. *Id.* at 4.

Ms. Childers appealed this decision to the Plan. *Id.* at 4–5. Upon review of her claim, the Plan concluded that Ms. Greene's beneficiary designation was inval-

1. 29 U.S.C. §§ 1001 *et seq.* (2003).

id because the Plan requires that married participants receive their benefits in the form of a QJSA unless they make an alternate election and receive spousal consent. *Id.* The required spousal consent was never obtained. *Id.* at 5.

Ms. Childers appealed the Plan's decision several times before she was notified in May 2003 that the Plan's decision was final and that she was not entitled to further administrative review. *Id.* Having exhausted her administrative remedies, Ms. Childers filed this suit.

Pending are Defendant Greene's motion to dismiss and Defendants MedStar and the Plan's motion to dismiss or for summary judgment and motion for attorneys' fees. No hearing is necessary. Local Rule 105.6 (D.Md.2001).

## ANALYSIS

### A. ERISA Allegations

Ms. Childers, in her response to the Defendants' motions to dismiss, acknowledged that her ERISA claims could not succeed and agreed to the entry of judgment against her on both Counts of the complaint. Pl.'s Resp. ¶¶ 1–2. Accordingly, summary judgment will be granted in favor of Defendants MedStar and the Plan, and Defendant Greene's motion to dismiss will be granted.

### B. Whether to Award Attorneys' Fees

MedStar and the Plan contend that they are entitled to attorneys' fees from Ms. Childers or her counsel pursuant to 29 U.S.C. § 1132(g). Defs.' Mot. to Dismiss 25. Under 29 U.S.C. § 1132(g) the court has discretion to "allow a reasonable attorney's fee and costs of action to either party" in an ERISA case.

To determine whether an award of attorneys' fees is reasonable under the circumstances, the court applies a five part test. *Reinking v. Philadelphia Am. Life*

*Ins. Co.,* 910 F.2d 1210, 1217–18 (4th Cir. 1990). The court must examine:

1. degree of opposing parties' culpability or bad faith;

2. ability of opposing parties to satisfy an award of attorneys' fees;

3. whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

4. whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself;

5. the relative merits of the parties' position.

*Id.* (citing *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1266 (5th Cir.1980)).

The factors do not constitute a rigid test, but "rather provide[ ] general guidelines for the district court in determining whether to grant a request for attorneys' fees." *Quesinberry v. Life Ins. Co. of N. Am.,* 987 F.2d 1017, 1029 (4th Cir.1993) (citing *Gray v. New England Tel. & Tel. Co.,* 792 F.2d 251, 258 (1st Cir.1986)). No one factor is necessarily determinative, and some may not apply in a particular case, but together they are the "nuclei of concerns that a court should address" when applying ERISA § 1132(g). *Id.* (citing *Bowen,* 624 F.2d at 1266).

### 1. Degree of Opposing Parties' Culpability or Bad Faith

MedStar and the Plan argue that Ms. Childers acted in bad faith by: (1) raising meritless new arguments in her complaint that were not presented to the Plan in its administrative review of her claim; (2) claiming that the Defendants breached their fiduciary duties but failing to identify who or what entity was the plan fiduciary; (3) providing no evidentiary support for

her allegations; and (4) ignoring defense counsel's warnings that her case was without merit and that MedStar and the Plan would seek attorneys' fees if she failed to dismiss the case. Defs.' Mot. to Dismiss 26–27.

John Condliffe, Esquire ("Mr.Condliffe") represented Ms. Childers in this case. In a letter from Mr. Condliffe to MedStar and the Plan, he revealed why his client was agreeing to judgment on the ERISA claims but objecting to paying attorneys' fees. Defs.' Ex. 3 (letter from John Condliffe, Esquire to Douglas Desmarais, Esquire and Mark Gilday, Esquire, July 14, 2003). Mr. Condliffe explained that "[t]he reason I want a ruling on the merits is that I have advised Ms. Childers that she has a valid malpractice claim against her former attorney." *Id. See also* Desmarais Aff. ¶ 6 ("Plaintiff's Counsel stated that he felt that he had no choice but to proceed with the lawsuit in order to obtain a final judgment in this case, which he felt was a condition precedent to proceeding with a malpractice lawsuit against Plaintiff's prior counsel").

■ Bad faith is evidenced by "an intentional advancement of a baseless contention ... made for ulterior purposes." *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir.1986). By pursuing this case to advance an ulterior motive, while aware of its legal and factual deficiencies,[2] Ms. Childers' counsel acted in bad faith.

■ Attorneys, by training and experience, are "in the best position to understand the problems presented by a frivolous case and to advise [a] plaintiff not to pursue the case or to withdraw." *Baker v.*

*Greater Kansas City Laborers Welfare Fund*, 716 F.Supp. 1229, 1231 (W.D.Mo. 1989). Therefore, an award of attorneys' fees and costs under ERISA may be assessed "against either a party or an attorney." *Loving*, 11 F.Supp.2d at 495 (*citing Monkelis v. Mobay Chem.*, 827 F.2d 935, 937 (3d Cir.1987)). There is no evidence to demonstrate that Ms. Childers acted unreasonably by relying on her attorney's guidance. Accordingly, an award of attorneys' fees will not be assessed against Ms. Childers. Ms. Childers' attorney acted culpably, however, and it may be appropriate to assess an award of attorneys' fees against him.

2. Ability of Opposing Parties to Satisfy an Award of Attorneys' Fees

■ Attorneys' fees may be awarded to a prevailing party in an ERISA action unless "special circumstances would render such an award unjust." *Quesinberry*, 987 F.2d at 1029; *Reinking*, 910 F.2d at 1218. An inability to afford attorneys' fees is a circumstance which may counsel against an award. *Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 227 (1st Cir.1996).

■ MedStar and the Plan contend that since Mr. Condliffe maintains a successful legal practice, he should have no difficulty paying an award of attorneys' fees. Defs.' Reply 16. Mr. Condliffe argues that although he is part owner of a law practice, his income is relatively modest because his firm often works with indigent clients who are unable to pay part or all of their legal fees. Pl.'s Response ¶¶ 23–24. Mr. Condliffe's income is further depleted by the

---

**2.** *Kirby v. General Electric Co.*, 2000 WL 343175, *7 (W.D.N.C.2000) (finding bad faith when plaintiff continued to prosecute case despite having been notified of its factual and legal deficiencies); *Loving v. Pirelli Cable Corp.*, 11 F.Supp.2d 480, 496 (D.Del.1998) (finding bad faith when plaintiff filed com-

plaint that his attorney could have easily discovered was barred by res judicata); *Cowden v. Montgomery County Society for Cancer Control*, 653 F.Supp. 1072, 1074 (S.D.Oh.1986)(finding bad faith when plaintiff pursued case long after he should have realized his claims were without merit).

costs of supporting four dependent children. Pl.'s Ex. 1 (Mr. and Mrs. Condliffe's Joint 2002 U.S. Income Tax Return; Comparison of 2001 and 2002 U.S. Income Tax Returns). Therefore, this factor does not support an award of attorneys' fees.

### 3. Whether an Award of Attorneys' Fees Against the Opposing Parties Would Deter Other Persons Acting Under Similar Circumstances

An award of attorneys' fees in this case would deter other counsel from pursuing cases that are frivolous, unreasonable, and without foundation. This factor, thus, weighs in favor of granting an award of attorneys' fees.

### 4. Whether the Parties Requesting Attorneys' Fees Sought to Benefit All Participants and Beneficiaries of an ERISA Plan or to Resolve a Significant Legal Question Regarding ERISA Itself

There has been no evidence presented in this case to implicate this factor; accordingly, it will not be considered.

### 5. The Relative Merits of the Parties' Position

For the reasons discussed above, the relative merits of the parties' positions "clearly weigh in favor of the wrongly accused Defendant." *Kirby,* 2000 WL 343175 at *5.

Although Mr. Condliffe has shown that requiring him to pay attorneys' fees would create a financial hardship for him, the "Court cannot turn a blind eye to the significant and needless expense occasioned to the [defendants]." *Devine v. American Benefit Corp.,* 27 F.Supp.2d 669, 678 (S.D.W.V.1998). Therefore, it is appropriate to award attorneys' fees in this case, but the fee award will be reduced to reflect Mr. Condliffe's limited ability to pay. *See Black v. Bresee's Oneonta Dep't Store, Inc. Sec. Plan,* 919 F.Supp. 597, 605 (N.D.N.Y.1996) (awarding half of claimed attorneys' fees where inability to pay was indicated but other factors made award of fees appropriate); *see also McNaboe v. NVF Co.,* 2002 WL 31496655, *5, 2002 U.S. Dist. LEXIS 21287, *14 (D.Del.2002) (explaining that partial reimbursement of fees may be a sufficient deterrent for those of modest means and that fee awards under ERISA are not intended to be excessively punitive).

### C. Determining Reasonable Attorneys' Fees

■ Having determined that an award of attorneys' fees is appropriate, the Court must consider what amount of fees would be reasonable. *Cox. v. Reliance Standard Life Ins. Co.,* 235 F.Supp.2d 481, 484 (E.D.Va.2002). This lodestar figure is calculated by multiplying the reasonable number of hours worked by an appropriate hourly rate. *Id. (citing Brodziak v. Runyon,* 145 F.3d 194, 196 (4th Cir.1998)).

Three attorneys worked on the case for the Defendants. Defs.' Ex. 4 (billing summary). Douglas Desmarais, Esquire, a partner with the law firm of Smith & Downey, with 16 years experience, worked 22.4 hours on the case between June 11, 2003 and July 31, 2003. *Id.;* Desmarais Aff. ¶ 3. Mr. Desmarais charged $275 per hour for his work. *Id.* The Maryland Rules and Guidelines for Determining Lodestar Attorneys' Fees ("Fees Guidelines") suggests that lawyers with this level of experience bill at a rate of $200 to $275 per hour. App. B (D.Md.2001).

Linda Miller, Esquire, Of Counsel at Smith & Downey, with 21 years experience, worked 13.2 hours on the case between June 3, 2003 and July 31, 2003. Defs.' Ex. 4 (billing summary); Miller Aff. ¶¶ 2, 4. Ms. Miller charged $280 per hour for her efforts. *Id.* The Fees Guidelines

suggest that an attorney with this amount of experience receive between $200 and $275 per hour for their work. App. B (D.Md.2001).

Richard Hackman, Esquire, an associate at Smith & Downey, with six years experience, worked 6.8 hours on the case between June 6, 2003 and August 6, 2003. Defs.' Ex. 4 (billing summary); Hackman Aff. ¶¶ 2–3. Mr. Hackman charged $210 per hour for his work. *Id.* The Fees Guidelines recommend that attorneys with this level of experience charge $150 to $225 per hour. App. B. (D.Md.2001).

The total bill for defense counsel's work comes to $21,574. Mr. Condliffe "cannot, in his wildest imagination, contemplate how to incur that much in legal fees on a single motion to dismiss." Pl.'s Reply ¶ 27. Mr. Condliffe did not, however, elaborate on how much time would be appropriate or whether defense counsel's requested fees were reasonable.

■ Because no evidence has been submitted to show that the hours spent on the case or the fees charged were unreasonable, and because defense counsel's requested fees track closely with those recommended by the Fees Guidelines, the Court will use defense counsel's requested fees of $21,574 as its lodestar figure.

The lodestar may be adjusted upward or downward based on consideration of the factors identified in *Barber v. Kimbrell's Inc.*[3] The *Barber* factors are as follows:

  (1) time and labor expended;

  (2) novelty and difficulty of questions raised;

  (3) the skill required to properly perform the legal services rendered;

  (4) the attorneys' opportunity costs in pressing the litigation;

  (5) the customary fee for like work;

  (6) the attorneys' expectation at the outset of the litigation;

  (7) time limitations imposed by the client or the circumstances of the case;

  (8) amount in controversy and the result obtained;

  (9) the experience, reputation and ability of the attorneys;

  (10) the undesirability of the case within the legal profession;

  (11) the nature and length of the professional relationship between the attorney and client; and

  (12) attorneys' fees awards in similar cases.

*Cox,* 235 F.Supp.2d at 485. Having considered all twelve factors, the Court finds no need to adjust the established lodestar.

### CONCLUSION

For the reasons discussed above, MedStar and the Plan's motion for attorneys' fees will be granted. To account for Mr. Condliffe's limited ability of to pay attorneys' fees the requested lodestar of $21,574 will be reduced by 75 percent. Mr. Condliffe will thus be ordered to pay $5393.50 to the attorneys for MedStar and the Plan.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is, this 3rd day of November 2003, ORDERED:

5. That Defendant Mr. Norman Greene's motion to dismiss BE, and it HEREBY IS, GRANTED;

6. That Defendants MedStar Health, Inc. Cash Balance Retirement Plan and MedStar Health, Inc.'s motion for summary judgment BE, and it HEREBY IS, GRANTED;

---

**3.** 577 F.2d 216, 226–28 (4th Cir.1978).

7. That judgment BE, and it HEREBY IS, ENTERED in favor of Defendants MedStar Health, Inc. Cash Balance Retirement Plan and MedStar Health, Inc., and against Ms. Debbie Childers;

8. That the Defendants MedStar Health, Inc. Cash Balance Retirement Plan and MedStar Health, Inc.'s motion for attorney's fees BE, and it HEREBY IS, GRANTED;

9. That the Plaintiff's counsel, John Condliffe, Esquire, BE, and HEREBY IS, ORDERED to pay Defendants MedStar Health, Inc. Cash Balance Retirement Plan and MedStar Health, Inc.'s attorneys $5,393.50 in fees within twelve (12) months of the date of this Order; and

10. That the Clerk of the Court send copies of this Memorandum Opinion and Order to counsel for the parties.